U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 08-03712

ORDER ON MOTION FOR RELIEF FROM STAY

The relief set forth on the following pages, for a total of 7 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/31/2008**



US Bankruptcy Court Judge
District of South Carolina

Entered: 07/31/2008

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 08-03712-DD |
| Irwin Barton Dumas, | Chapter 13 |
| Debtor(s). | **ORDER ON MOTION FOR RELIEF FROM STAY** |

THIS MATTER is before the Court on Edens & Avant Financing Limited Partnership's ("Movant") Motion for Relief from Stay ("Motion"). A hearing was held on this matter on July 21, 2008. Both Movant and Irwin Barton Dumas ("Debtor") appeared and made arguments by and through counsel. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.

*Facts*[1]

1. Movant executed a lease agreement with Cold Stone Creamery Leasing Company, Inc. ("Cold Stone"). This agreement identifies Cold Stone as "Tenant." Debtor is not a party to the lease agreement.

2. Cold Stone executed a sublease agreement with Debtor.[2] Debtor or an entity with which he is affiliated operated an ice cream shop at the premises, but closed for business in March, 2008. The shop was managed by Debtor's now estranged wife.

3. Rent has not been paid by Cold Stone or Debtor since January, 2008 and arrears are in excess of $20,000.

---

[1] To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted.

[2] Dolce LLC, of which Debtor is the member, made the lease payments and operated the Cold Stone franchise. The sublease is with "I Barton Dumas."

4. Cold Stone and Debtor continued to occupy the premises, and Movant commenced eviction proceedings in April, 2008.  Cold Stone did not appear for the eviction proceedings.  Debtor requested to be and was made a party in the eviction proceedings.  On May 21, 2008 the Honorable William H. Womble, Jr., Magistrate Judge of Richland County, ordered that Cold Stone and Debtor be evicted from the property.  He directed that a Writ of Ejectment would issue five days thereafter.

5. Two days prior to Judge Womble's decision Debtor's estranged wife filed a Chapter 7 bankruptcy petition and indicated an interest in the lease.  *See In re Joan Traylor Dumas*, case no. 08-02935-DD. Based on this filing Debtor filed a motion to reconsider the eviction order.  Movant obtained a Consent Order from the Bankruptcy Court nullifying any stay imposed by Joan Dumas' bankruptcy filing.  The Court, with the consent of the chapter 7 Trustee, ruled that the leased premises were not property of her estate.

6. On June, 25, 2008, the hearing date for Debtor's motion to reconsider scheduled before Judge Womble, Debtor filed a Chapter 13 petition commencing the current case.

7. On June 27, 2008 Movant filed the present Motion.

8. The original term of the lease expires on September 30, 2008.[3]  The lease contains two five (5) year renewal options.  Section 1.3 of the Ryder to the Lease (Movant's Exhibit 1) states,

> "Tenant is granted the option(s), provided it is not in default of any
> of the provisions and conditions of this Lease, to renew the Lease
> for two (2) terms of five (5) years each….  In order to exercise the

---

[3] Article 1(I) of the lease states that the lease term is five (5) years and zero (0) months from the "commencement date" of the lease, except that if the commencement date is on a date other than the first day of the calendar month the lease shall extend for the number of days remaining in the calendar month following the commencement date. Article 1(J) defines the commencement date as the earlier of 1) ninety (90) days from the date the Landlord delivers the leased premises or 2) the date on which Tenant opens for business. There was no evidence presented showing when Movant delivered premises or when Debtor opened for business so the Court is unable to calculate when the lease expires. However, Movant's property manager for Trenholm Plaza, Amanda Hepley, testified that the lease ended September 30, 2008. Debtor offered no testimony contradicting Ms. Hepley's testimony.

    option to renew the Lease, Tenant must give written notice of its election to exercise same, to be received by Landlord no later than one hundred twenty (120) days prior to the expiration of the initial term…"

9. According to the terms of the lease in order to renew the lease the "Tenant" must have given Movant written notice of the intent to renew on or before June 2, 2008.

10. Paragraph 2 of the sublease agreement (Exhibit 2) states,

> <u>Renewal Options.</u>  If the Lease contains renewal options, Sublessee must notify Sublessor in writing (by certified mail, return, receipt requested) of Sublessee's intent to exercise such option(s), at least 180 days before the date that Sublessor is required to notify the landlord pursuant to the lease of its intention to exercise such option, and that exercise shall be accompanied by the payment of the first two months rent for the renewal term. That exercise shall be irrevocable in all events.  In reliance thereon, Sublessor shall commit to that renewal and Sublessee indemnifies and holds Sublessor and its affiliates harmless in respect of that exercise and this Sublease shall be extended accordingly.

11. At some point in March of 2008 Debtor became aware that payment was in default on the lease agreement.[4]  Debtor contacted Ms. Hepley, the property manager, regarding the default and she informed him of the amount in arrears and indicated he could cure the default.  At some time in April Debtor called Ms. Hepley to ask where he should deliver a check to cure the default and she informed him at that time that Movant would no longer accept the rent arrears and stated that Movant no longer wished to reinstate the lease.

### *Arguments of the parties*

There were two issues argued at the hearing on the Motion. (1) The Debtor's right to cure a default through his chapter 13 plan, and (2) whether Debtor as subtenant has a right to exercise

---

[4] Although Debtor is the subtenant, testimony indicated that Debtor's wife managed the Cold Stone Creamery business.  Debtor indicated the reason he did not discover the default until March was because he and his wife were going through divorce proceedings.

the renewal option contained in the lease. The Court need not address the former as the Court's determination as to the latter issue makes it moot.

Movant argues that the tenant is Cold Stone, and, as such, it is the only entity that may exercise the renewal option. Article 1(O) of the lease agreement states that the tenant is "Cold Stone Creamery Leasing Company, Inc." Section 1.3 of the Rider to the lease agreement states, "[I]n no event may Tenant assign any options granted to Tenant in this lease; all such options being deemed personal and exercisable by Tenant only."

Debtor argues that there are equitable factors that should be considered and that in equity Debtor should be allowed to exercise the option. These factors include, *inter alia*, (1) Movant accepting payment from Debtor or an entity controlled by Debtor (Dolce, LLC) during the entire original lease term; (2) Employees of Movant knew Debtor was the franchisee who made the lease payments; (3) Employees of Movant solicited the renewal of the lease directly from Debtor; and (4) After Debtor was informed of the breach he attempted to cure the default and originally was told he could do so, but was later told that Movant would not accept payment because of a change in plans for the mall, Trenholm Plaza.

### *Analysis*

Without regard to Debtor's equitable arguments, the sublease clarifies two things: (1) Debtor had an avenue to renew the lease and did not timely avail himself of the option, and (2) Debtor and Cold Stone considered the renewal options personal to Cold Stone.

In order to exercise his option Debtor had to notify Cold Stone of his intent by December 5, 2007. There is no evidence that Debtor complied with this requirement. In light of the express agreement of Debtor and Cold Stone, the Court should not use its equitable powers to allow Debtor an additional different opportunity to exercise the renewal option. In *Manufacturers' Finance Co. v. McKey* the U.S. Supreme Court stated,

> The mere fact that a party is obliged to go into a federal court of equity to enforce an essentially legal right arising upon a contract valid and unassailable under controlling state law does not authorize that court to modify or ignore the terms of the legal obligation upon the claim, or because the court thinks, that these terms are harsh or oppressive or unreasonable. A party may stand upon the terms of a valid contract in a court of equity as he may in a court of law…. [I]t is well settled, this court said in *Hedges v. Dixon County*, 150 U.S. 182, 189, 14 S.Ct. 71, 73, 37 L.Ed. 1044, "that a court of equity, in the absence of fraud, accident, or mistake, cannot change the terms of a contract."

*Manufacturers' Finance Co. v. McKey,* 294 U.S. 442, 55 S. Ct. 444 (U.S. 1935).

Regardless of the perceived unfairness of this outcome, the fact is Debtor had a contractual right to extend his lease, but did not comply with the express terms of the sublease. Moreover, it is clear that Debtor knew or should have known he did not have the right to unilaterally exercise the renewal option without Cold Stone. Thus, under the lease and sublease Debtor knew he was not the tenant of the leased premises and absent fraud, mistake, or accident the Court may not use its equitable powers to alter the parties express agreement.

It follows that because Debtor is not the lessee in this three party arrangement, he is also unable to assume the lease pursuant to 11 U.S.C. § 365(d)(4)(A). This section states,

> Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of--
> 
> (i) the date that is 120 days after the date of the order for relief; or
> 
> (ii) the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4)(A). The language "an unexpired lease of nonresidential real property under which the *debtor is the lessee*" is determinative to this issue. Debtor is not the lessee and he may not assume or reject the lease at issue. Even if the Debtor were the proper party to assume this lease he has not cured or provided adequate assurance of the prompt cure of the

default in lease payments, especially given the termination of the lease in two months. *See*

*§ 365(b)(1)(A); In re Randolph*, C/A No. 06-03729-JW, slip op. (Bankr. D.S.C. Oct. 26, 2006).

### *Conclusion*

Under the terms of the lease and sublease agreements Debtor is a sublessee and not the tenant. Since Debtor is not the lessee, § 365(d)(4)(A) does not apply to this lease and Debtor may not assume the lease at issue. Movant seeks relief from stay for cause under § 362(d)(1). A showing of cause is not limited to a lack of adequate protection. In this instance Movant has met its burden of establishing cause for relief from the stay in order to conclude its eviction proceeding. Debtor cannot assume the lease and cannot extend the term. No purpose is served in affording Debtor use of the premises for the remaining two months of the lease term when such use would necessarily be conditioned upon payment of a sum so great that cure would never be undertaken. The ice cream shop closed pre-petition and no effective reorganization of the Debtor's financial affairs could include opening the shop for a period of two months. The stay is modified to permit Movant authority to complete its eviction of the Debtor.

**AND IT IS SO ORDERED.**
Columbia, South Carolina
July 31, 2008